IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.4:19-cr-40069-JPG-1 |
| | ) | |
| JORGE L. LEAL, | ) | Benton, Illinois |
| | ) | May 5, 2022 |
| Defendant. | ) | 10:27 A.M. |

SENTENCING HEARING
TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE J. PHIL GILBERT
UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff: THOMAS E. LEGGANS
Assistant U.S. Attorney
402 West Main Street
Suite 2A
Benton, IL 62812

For the Defendant: GREGORY N. SMITH
Law Office of Gregory N. Smith
7733 Forsyth Blvd., Suite 1850
St. Louis, MO 63105

Amy B. Richardson, RDR, CRR
IL CSR #84-2809
P.O. Box 181
Benton, IL 62812
(618)439-7735

Proceedings recorded by mechanical stenography; transcript produced by computer-aided transcription

(Proceedings had in open court:)

COURTROOM DEPUTY CLERK: United States of America vs. Jorge Luis Leal, Case Number 19-40069. This matter comes before the court for sentencing.

Are the parties ready?

MR. LEGGANS: Tom Leggans ready on behalf of the United States. Good morning, Your Honor.

THE COURT: Good morning.

MR. SMITH: Your Honor, good morning. Greg Smith on behalf of Mr. Leal. We are ready.

THE COURT: Good morning. Let the record show that the defendant, Jorge Luis Leal, is present in court with counsel, Mr. Smith. Mr. Leggans is present on behalf of the Government. This matter comes before this court for sentencing.

Mr. Leal, a written Presentence Report has been initially disclosed on January 25 of this year and revised on February 16 of this year to assist me in sentencing you. Have you received a copy of that report?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Have you had an opportunity to read it?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Your previous attorney,

Mr. Williams, filed an objection to the report and there was an addendum to the report dated -- as soon as I can find the date on here -- February 16. Have you received and reviewed a copy of that?

10:28:06 THE DEFENDANT: Yes, Your Honor.

THE COURT: And, of course, the objection has to do with the jury trial. You're objecting to the paragraphs that have the evidence as to the -- that was heard by the jury.

10:28:17 And but other than those objections, Mr. Smith, do you or the defendant have any other objections to the report that would affect the guideline range at all?

MR. SMITH: No, Your Honor.

10:28:32 THE COURT: Okay. Does the Government have any objections to the report?

MR. LEGGANS: No, Your Honor.

THE COURT: Okay. The Court's reviewed the objections, and, of course, the objections basically 10:28:41 have to do with the evidence that was during the trial. The jury heard the evidence, found the defendant guilty.

So the Court's going to overrule the objections the defendant had in Paragraphs 8 through 13 that was 10:28:57 contained in discovery obtained from the Government.

The information was also presented to the jury in which the defendant was found guilty last November.

So the Court's going to adopt the probation officer's position in the Presentence Report. There being no other objections to the report, the Court hereby adopts the Presentence Investigation Report and the findings contained therein as the findings of this court, including that the base level offense in Count 1 of attempted enticement of a minor as found in Paragraph 19 is 28.

Under Paragraph 20 the offense involved the use of a computer or interactive computer service device to persuade, induce, entice, coerce, or facilitate the travel of the minor to engage in prohibited sexual conduct, a 2-point enhancement, rendering a total offense level of 30.

No points off for acceptance of responsibility because this was a trial. Criminal History Category of 1, there being zero criminal history points. A statutory range of 10 years to life. Even though the guideline is 97 to 121 months, that is an effective range of 120 to 121 months. Supervised release range of 5 years to life; fine range of 30,000 to $250,000; and a $100 special assessment.

Any objections to those specific guideline

range findings?

MR. SMITH: Not on behalf of the defendant, Your Honor.

MR. LEGGANS: None from the Government, Your Honor.

10:30:27

THE COURT: Recommendation from the Government?

MR. LEGGANS: Your Honor, the Government recommends a sentence of the mandatory minimum of 120 months.

10:30:33

THE COURT: Mr. Smith?

MR. SMITH: Your Honor, I concur with that. I just ask the Court to consider his complete lack of criminal history. He came into this country from Mexico as a 12-year-old. He learned the language.

10:30:46

Mr. Leal was successful in school. He went on and got a college degree, started a business, raised a family. I just ask that you consider all that with that 120-month request.

THE COURT: Mr. Leal, anything you wish to say

10:30:58

or offer in mitigation before this court imposes sentence? And the Court has read several letters that were sent by family members and friends on your behalf.

THE DEFENDANT: Yes. I would like to express a statement, please.

10:31:11

THE COURT: Okay. Why don't you pull the mic a

little bit closer to you. If you are going to read something, read it slowly, so we make sure that we can get it down.

THE DEFENDANT: Sure. Thank you.

10:31:21 Respectfully, for a few days I have been contemplating about what I would say if I had a chance to speak in court and were not discouraged by my attorney. After praying about it, I decided to share with you about -- not about the monster character I was 10:31:42 made into but about the actual person that was convicted.

I represent the traditional immigrant who comes to this country in search of a better life and contributes to its melting pot of cultures. I was born 10:32:00 in Mexico in 1985. I am the youngest of seven children. While in Mexico, I grew up without my dad, as he had been in the States for as long as I can remember.

My dad would always send my mom money, and she 10:32:20 took good care of us. Life in Mexico was simple, yet we still had some struggles. We had to walk to school every day for at least a mile, and for a long time we did not have electricity nor portable water. Regardless, I was happy. I was just a kid.

10:32:47 Exactly the day I turned 12 in 1997, we left

everything behind and crossed the famous Rio Grande into America. It was there that I almost lost my mom as she panicked and almost drowned halfway crossing the river, but thank God we all made it to the land of the free and the home of the brave.

10:33:09

We ended up in Steele, Missouri, where my life in America quickly took off. I was immediately enrolled in school, but because I knew no English, I was held back a year for the purpose of learning some first. About two years later I was speaking the language fluently and had adapted to the culture, and, frankly, I was overachieving many students.

10:33:36

Every year in high school I made honor roll and was recognized as the best art student in the school. I was a member of many clubs and held office in some, but what I am most proud of is that I am the only one in the history of the school who has ever -- who has ever been accepted to attend the Missouri Fine Arts Academy, a prestigious program for the most talented students in the state, that took place in the summer of 2002 at Southwest Missouri State University in Springfield, Missouri.

10:33:59

10:34:23

Once I graduated high school in 2003, I moved to Union City, Tennessee, to continue my education at the University of Tennessee at Martin. Before I

10:34:43

started college, I began working at McDonald's, where I quickly escalated to the position of production manager and developed the love for the restaurant business.

But it wasn't the only love I developed there. It was there, too, where I met the love of my life. Until this day I call it Mac Love. Because I had to work all through college, I did not have much time to attend all those wild college parties like most typical students, but my experience was still great.

In 2005 I received an Award of Excellence through the Modern Foreign Language Department that gave me the unique opportunity to study French at the University of Quebec at Chicoutimi for the summer semester. I dominated in Canada and came back to Tennessee to continue my studies.

In the spring of 2006, love dominated me, and I married the love of my life. In December of 2007, I graduated magna cum laude from UT Martin with a major in French and minor in Art. I was the first in my family to graduate from college, and next thing you know, the kid who knew no English at all had become trilingual, a French-speaking Mexican.

Immediately after graduating from college, my wife and I moved to Marion, Illinois, to work as servers at Don Sol Mexican Grill. After a couple

years, I became store manager at this location. Soon after, I became part owner and was able to expand the corporation by opening three more restaurants successfully.

In 2018, we separated from Don Sol Mexican Grill and created a new concept called La Galeria Mexican Cuisine and Creamery. This concept opened in Marion in September of 2019, and since then it has been an asset to Southern Illinois, showcasing true authentic Mexican dishes, desserts, art, and culture.

Unfortunately, because of this charge, I am no longer part of this business, but I am proud to share with you that for the past two years it has been recognized as Southern Illinois's favorite Mexican restaurant.

America was being so good to me before this happened that most people would say I was living the American dream. I had a beautiful family, a house, and a promising business concept. I was looking forward to a bright future. I was not ashamed of anything. I had nothing to hide. I had no criminal record.

As the prosecutor said through his closing statement during trial, that I was a successful, educated businessman and a restaurant owner. He was right. He was absolutely right, except he used my

success against me in a very creative way to make me into a convicted felon.

He said I wasn't some lamb in the woods and that I was someone that no Government agent could easily take advantage of. He concluded I was guilty of being too educated and successful that I just didn't care. This was the best assumption he could come up with to destroy my American dream.

Indeed, this charge -- this charge and conviction have brought many consequences to my life. Initially, I was separated from my family and was put to live at the halfway house in Marion. As soon as I came on the news, social media, you name it, my reputation was destroyed.

The more I was being judged, the more I was feeling unwanted. People distanced themselves from me and depression took over me. I was so overwhelmed with emotions that I felt a need to finally confess to my family that I had been sexually abused twice as a minor, something I had never told anyone else before.

Feeling hopeless and helpless, I attempted to commit suicide in my room at the halfway house. My roommate came in and prevented me, as I had a cord already wrapped around my neck ready to hang myself from the top bunk and take my last breath. I felt

worthless and told him to tell my wife, kids, and my mom that I loved them and that I was sorry for failing.

I was taken to a mental facility for about six days and was brought back to the halfway house. The day after, my wife told me she was not taking me back. I panicked, and rather than the crisis worker coming to talk to me at the halfway house as I requested, I was taken to jail, the safest place for me, according to the Court, probation, and the Government.

Williamson County Jail, however, has not been the place they claim. Besides losing my marriage and my last grandparent while being there, I have been deprived of my rights. Because of my charge, I was bullied, harassed, threatened, and ultimately assaulted while staff intentionally failed to step in and protect me.

Instead, they retaliated against me, punished me, and denied me prompt and adequate medical assistance, while the aggressors did not have to pay any consequences at all. In addition, during shakedowns they have read and taken legal and confidential documents from me pertaining to my criminal defense and the assault.

Furthermore, they have made every effort possible to make it especially difficult for me to

exercise my right to file grievances. All this has resulted in a vast amount of mental and emotional distress, which remains a reality today.

It is undisputable the suffering I have been living due to this charge, but it is beyond the unimaginable the suffering my two sons have been experiencing because Daddy was taken away. Meet my two handsome boys. I am a proud dad to Giovani, who is 12, and Leonardo, who is 6.

Before this happened, Giovani was playing soccer, doing track and field, martial arts, and piano lessons. When I told him I was in jail, he was shocked and did not talk to me for months. Today he talks to me but does not understand how Dad could have committed a crime.

Leonardo, on the other hand, he believes I work at the jail, but he knows it is not normal for Dad to be gone for too long. One time he asked me, Dad, how come you're always working? Why don't you come home and stay with Mom anymore? He is so innocent. But perhaps the most remarkable and heartbreaking has been when he asked me, Dad, can you come home tomorrow so you can take me to church? Their lives have been forever changed and will never, ever be the same again.

In 2012 I became a proud U.S. citizen. On

July 19, 2019, I was living the American dream as it was unexpectedly destroyed. Yet, my faith does not allow me to hold any remorse against anyone.

I regret that I did not look for a better solution when my wife and I were having marital problems and chose to use dating apps instead, ultimately leading me to commit adultery. I find myself guilty for that.

However, I will not take responsibility for attempting to entice a minor. I emphasize that I hold the Government liable for enticing me to commit a crime. Yet, I want to make it clear that I forgive them and I pray that God forgives alls.

Finally, as I continue this journey to prove my innocence, let it be heard that I fear not because God is my attorney by excellence. My untouched soul belongs to him, and he will carry me on beyond the day that I finally see America to be the one nation under God, indivisible, with liberty and justice for all.

Without any reservation I speak with authority and certainty that God's justice will prevail beyond a reasonable doubt. I know this because God's word cannot be chained. 2 Timothy Chapter 2, Verse 9. Thank you.

THE COURT: Well, Mr. Leal, I will say that in

the 30 years I have been here, that's one of the most remarkable allocutions I have ever heard for you to go through your whole life.

I do have to -- do want to point out to you that, you know, you said the Government made you out to be a convicted felon. I think you had a hand in doing that yourself.

You know, I said when I speak to students that come and observe sentencings and things like that, and I've said that, you know, the internet has done as much disservice to humanity as service. You are the one that chose to get on dating apps, not the Government. You were the one that chose to chat with who you thought was an adult or a minor, not the Government.

You know, you put -- your, yourself, you know, you are the American dream. People come across. You sacrificed your life coming across the -- was it the Rio Grande you came across?

THE DEFENDANT: Yes, Your Honor.

THE COURT: As we sit here right now, people are dying crossing that river. And you made yourself. I mean, you did live the American dream. And I hope that dream -- I know this is a bump in the road, but you're not going -- and I will say this. You know, I am going to be giving you the 10-year mandatory

minimum. I don't have any choice, but in your case, you know, because that's what the statute says, it's probably more than I would have given you had I had flexibility to give you, although I would still give you time because a jury convicted you and convicted you on evidence and evidence that you created.

The Government didn't manufacture the evidence. You created the evidence that resulted in your own conviction. But you're not a bad person. You are a very bright person, and you have accomplished more than most people that are born in this country ever accomplish.

And how old are you now?

THE DEFENDANT: 37.

THE COURT: So you're going to get out soon enough to where you will be in your 40s when you get out, and you can still have a long life ahead of you. My gosh, I'm 73 and I am still going. Is it going to be hard because of this? Sure. But it's not going to be impossible. You've already done the impossible, and you can do it again. Don't give up.

I know this is going to be appealed, and you need to appeal it and let the Court of Appeals look at the record and determine whether or not I made any mistakes in the trial that would result in it coming

back. I honestly don't think they will, but that's for them to decide, not me.

But by sentencing you, you are not a bad person. You just did a bad thing because of the troubles you and your wife were having. Instead of going to counseling, you got on a dating app. And, you know, in the last month I have had three trials such as yours -- or two trials such as yours and then one was a drug case -- but I have had two trials such as yours, enticement of a minor.

And, again, you know, what's amazing in the testimony I have heard is the Government puts on a profile, and within 24 hours they get a hit. I don't know whether it's the first time you used the dating app. My suspicion is it probably wasn't, but the Government did not create the facts that resulted in your conviction.

But I'm going to give you the mandatory minimum because that's what the statute and the law that I have to abide by dictates. The Court, having considered all of the information in the Presentence Report, including guideline computations, and factors set forth in 18 U.S.C. 3553(a), pursuant to the Sentencing Reform Act of 1984, it will be the judgment of this court the defendant, Jorge Luis Leal, is hereby committed to the

custody of the Bureau of Prisons to be imprisoned for a term of 120 months.

It is ordered you shall pay United States a special assessment of $100, and the special assessment is payable through the Clerk of the U.S. District Court. The defendant appears to be indigent and does not have the ability to pay the additional $5,000 special assessment pursuant to 18 U.S.C. 3014.

It is further ordered you shall pay United States a fine of $300 payable through the Clerk of the U.S. District Court, and the fine is due immediately. You shall notify United States Attorney for this district within 30 days of any change of name, residence, or mailing address until paid in full.

Having assessed your ability to pay, payment of a total criminal monetary penalties shall be paid in equal monthly installments of $10 or 10 percent of your net monthly income, whichever is greater, and you shall pay any financial penalty that is imposed by this judgment that remains unpaid at the commencement of the term of supervised release.

Upon release from imprisonment, you shall be placed on supervised release for a term of five years. Within 72 hours of release from the custody of the Bureau of Prisons, you shall report in person to the

probation office in the district to which you are released.

While on supervision, you shall be subject to and be required to comply with the conditions of supervision as ordered by this court.

Have you had a chance to read and review and go over the recommended conditions of supervision that was attached to your Presentence Report?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Do you have any objections to any of those conditions?

THE DEFENDANT: No, Your Honor.

THE COURT: Is this your signature to the waiver of reading those in open court?

THE DEFENDANT: Yes, it is.

THE COURT: The Court accepts the waiver and those conditions become part of the judgment in this case.

I need to advise you, you have a right to appeal your conviction and this sentence, and said appeal must be filed within 14 days after entry of judgment. If you cannot afford the services of an attorney to handle your appeal, one will be appointed for you at this time. And if you so request, the Clerk of Court will notice an appeal for you at this time.

I presume you wish to appeal this sentence, conviction and sentence, so the Court will note that.

Mr. Smith, I would recommend you follow up with a written Notice of Appeal for the record.

10:55:53 MR. SMITH: I will, Your Honor.

THE COURT: All right. The Court is going to recommend to the Bureau of Prisons that you spend your time at the Marion facility in Marion, Illinois. They may not put you there, but the Court will make that

10:56:14 recommendation, Mr. Leal.

THE DEFENDANT: Thank you.

THE COURT: Okay. Anything further, Mr. Smith?

MR. SMITH: Not for the defendant, Judge.

THE COURT: Anything further, Mr. Leggans?

10:56:22 MR. LEGGANS: No, Your Honor. Thank you.

THE COURT: That will be all.

(Which were all the proceedings heard.)

* * * * *

I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.



____________________________ *May 20, 2022*

Certified Shorthand Reporter #84-2809